**In re William Michael ADKINSON, Debtor.**

**Bankruptcy No. 88–04523.**

United States Bankruptcy Court, N.D. Florida, Pensacola Division.

Dec. 29, 1988.

John F. Windham, Pensacola, Fla., Richard Simmons, Houston, Tex., for Continental Sav.

Adkinson, pro se.

## MEMORANDUM OPINION

LEWIS M. KILLIAN, Jr.,
Bankruptcy Judge.

This case is before the Court on Continental Savings Association's (Continental) Motion to Dismiss. Because dismissal of the petition is a severe sanction, the Court noticed and conducted an evidentiary hearing on November 9, 1988. The parties appeared and presented evidence.

■ Continental argues the Debtor's petition was filed in bad faith, and is intended solely to frustrate Continental's efforts to proceed against the Debtor in state court. The Debtor argues he filed his petition to effect an orderly reorganization of his business for the benefit of all his creditors.[1]

1. Debtor also argues Continental does not have standing to proceed with the motion to dismiss. This contention is without merit. Continental Savings Association was declared insolvent by federal bank regulators on September 26, 1988. The federal regulators opened a new entity, Continental Savings, a federal savings bank.

■ A Chapter 11 petition may be dismissed for cause, pursuant to Section 1112(b) of the Bankruptcy Code, if the petition was filed in bad faith. *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir. 1988); *In re Natural Land Corp.*, 825 F.2d 296 (11th Cir.1987); *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984). Courts have historically required actions under the Bankruptcy Code to be maintained in good faith. *In re Victory Construction Co., Inc.*, 9 B.R. 549 (Bkrtcy.C.D. Cal.1981), *modified on other grounds*, 9 B.R. 570 (Bkrtcy.C.D.Cal.1981), *vacated as moot*, 37 B.R. 222 (BAP 9th Cir.1984).

Under Section 1112(b) of the Code, the Court may dismiss for cause a petition filed in bad faith. Section 1112 is "authorization for the use of [the Court's] equity powers to prevent abuse of bankruptcy jurisdiction and the reorganization process." *In re Schlangen*, 91 B.R. 834 (Bkrtcy.N.D.Ill. 1988). The court in *In re Schlangen*, explained:

> The Court's duty as vigilante against illegitimate use of the Bankruptcy Code must be balanced against the policy of open access to the bankruptcy process ... Therefore, the Court must be careful not to deny the protection of the Bankruptcy Code to a Debtor whose legitimate efforts at financial rehabilitation may be hidden among derivative benefits (such as the delay of creditors resulting from the automatic stay) that, if viewed alone, might suggest bad faith.

91 B.R. at 837 (citations omitted).

The Court must make determinations of bad faith on a case by case basis. The court in *In re Little Creek Development*, 779 F.2d 1068 at 1072 (5th Cir.1986), explained:

> Determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condi-

The assets of Continental Savings Association were transferred to the new entity. The liabilities were taken by FSLIC. Continental Savings, a federal savings bank, has been substituted in this action for Continental Savings Association. (*See* Doc. 28).

tion, motives, and the local financial realities. Findings of lack of good faith in proceedings based on §§ 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum.

Although there is no fixed test for determining whether a petition is filed in good faith, the Eleventh Circuit has listed a number of factors a court might consider in deciding whether to dismiss a debtor's case for bad faith. These are:

1. the lack of a "realistic possibility of an effective reorganization;"

2. evidence that "the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights;"

3. whether the debtor is seeking to use the bankruptcy provisions "to create and organize a new business, not to reorganize or rehabilitate an existing enterprise, or to preserve going concern values of a viable or existing business;"

4. the timing of the debtor's relevant actions;

5. whether the debtor appears to be merely a "shell" corporation; and

6. whether the debtor was created, or the subject property transferred to the debtor, "for the sole purpose of obtaining protection under the automatic stay [of Chapter 11] by filing bankruptcy".

*In re Natural Land Corp.*, 825 F.2d 296, 298 (11th Cir.1987) (citations omitted).

More recently, the Eleventh Circuit, in *In re Phoenix Piccadilly*, 849 F.2d 1393, 1394–95 (11th Cir.1988), listed a number of recurring facts commonly found in decisions finding a lack of good faith in § 362(d) and § 1112(b), including:

(1) debtor has only one asset ... in which it does not hold legal title; (2) the debtor has few unsecured creditors whose claims are small in relation to the claim of the secured creditors; (3) the debtor has few employees; (4) the property is the subject of a foreclosure action as a result of arrearages on the debt; (5) the debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in the pending state court action; and (6) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

No single factor will lead to a finding of bad faith, nor are the factors listed above exhaustive. Courts have considered any evidence which indicates "an intent to abuse the judicial process and the purposes of the reorganization provisions". *In re Albany Partners, Ltd.*, 749 F.2d at 674.

■ Although the Debtor argues his petition was not filed in bad faith, most of the underlying facts are not in dispute. Debtor.filed his petition for relief under Chapter 11 on August 2, 1988. Although Bankruptcy Rule 1007(c) requires the Debtor to file schedules and a statement of affairs within fifteen days, Debtor's schedules and statement of affairs were filed October 17, 1988, approximately two months late. No extensions of time were granted by the Court.[2] In addition, the Debtor failed to attend the first meeting of creditors scheduled for September 16, 1988.[3] Debtor did not request a continuance or notify the Court, the parties or the United States Trustee he could or would not attend.

This same Debtor was collaterally involved in a prior bankruptcy case in Texas involving The Meyerland Company, a Texas corporation, placed into Chapter 11 involuntarily pursuant to a petition filed on June 1, 1987. This debtor is jointly and severally liable with Meyerland to Continental pursuant to a final judgment for $29 million. Continental was, at the time of the petition

2. Debtor moved for an extension of time on August 25, 1988. The Court, finding the motion very untimely, denied the extension.

3. The United States Trustee moved for dismissal or conversion of Debtor's case to Chapter 7 on the grounds the Debtor failed to file his sched-

ules and statement of affairs, failed to attend the § 341 meeting, and failed to provide the United States Trustee with information requested. This motion was also heard on November 9, 1988.

against Meyerland, attempting to collect on its judgment from this debtor and had filed an action in the District Court of Harris County, Texas, styled *Continental Savings v. William Michael ·Adkinson, The Development Group, Inc. and Sandsend Financial Consultants, Ltd.* That case seeks the recovery of assets, primarily stock in The Development Group, Inc. ("DGI"), that the debtor is alleged to have fraudulently transferred to Sandsend Financial Consultants, Ltd. ("Sandsend") preventing its turnover to Continental. Meyerland attempted to have this action against Adkinson blocked by the bankruptcy court hearing its case, but the attempt was unsuccessful. *In re Meyerland Company,* 82 B.R. 831 (Bkrtcy.S.D.Tex.1988). The Meyerland chapter 11 was finally dismissed for failure to prosecute, no operating reports or plan of reorganization having been filed. Apparently the only major activity of the debtor during that case was its attempt to stay Continental's action against Mr. Adkinson.

The instant case was filed one week prior to the scheduled trial in the case of *Continental Savings v. William Michael Adkinson, The Development Group, Inc., and Sandsend Financial Consultants, Ltd.,* and one day after Debtor had failed to appear for deposition in that case. On the day his petition was filed, debtor removed the state court case to the bankruptcy court for the Southern District of Texas, and filed an emergency motion to transfer venue to this Court. Venue was transferred by Bankruptcy Judge Mahoney on September 7, 1988. Ten days before the petition in this case was filed, the state court judge imposed sanctions on Sandsend and DGI, and found that the transfer of stock by the Debtor to Sandsend was "fraudulent and void in all respects." The court prohibited DGI and Sandsend from introducing any evidence at trial on damages except in rebuttal.

The nature and extent of Sandsend's participation in this case is a further indication of the true purpose in the filing of this petition. Throughout the case, Sandsend has consistently and vigorously sided with the debtor in resisting Continental's efforts to go forward with its litigation. Sandsend, as the recipient of the transfer of the DGI stock, would be the defendant in any core proceeding to avoid the transfer. Unless a trustee were appointed, the debtor, William Adkinson, would be the plaintiff. The apparent identity of interests between the debtor and Sandsend convinces this Court that the debtor has no intention of vigorously pursuing the action against Sandsend for the benefit of his other creditors, but instead is attempting to utilize the provisions of the Bankruptcy Code to protect himself and Sandsend from his creditors.

Given the factors in the present case, the Court finds that William Michael Adkinson filed his petition for reorganization in bad faith, for the sole purpose of delaying and frustrating the legitimate efforts of his creditors to enforce their rights, and without *any* realistic possibility of rehabilitation.[4] It is apparent that Debtor initially tried to stop Continental's collection efforts through the Meyerland bankruptcy in Texas. When that petition was dismissed—for lack of prosecution—Debtor filed this action for the sole purpose of attempting to again thwart Continental's efforts. These repeated efforts clearly evince "an intent to abuse the judicial process and the purpose of the reorganization provisions" and accordingly, the case will be dismissed. *In re Albany Partners, Ltd., supra.*

Continental has also filed a Motion to Remand, Motion to Appoint Trustee, and Motion for Relief from Stay. Because the Court grants the motion to dismiss, these motions are denied as moot. Continental's motion for attorney fees and costs will be denied.

A separate order will be entered in accordance with this memorandum opinion.

ORDERED.

---

**4.** Debtor's schedules list approximately $169 million in liabilities and approximately $19,000 in assets. The statement of affairs show Debtor is a self-employed real estate and development consultant, with no employees and no current income.